State v. Bradford Oil Co., Inc., No. 307-5-06 Wncv (Teachout, J., Oct. 25, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

**SUPERIOR COURT**                                         **CIVIL DIVISION**
**Washington Unit**                                        **Docket No. 307-5-06 Wncv**

**State of Vermont**
      **Plaintiff**


      **v.**


**Bradford Oil Co., Inc.**
      **Defendant**


**DECISION** re:
Bradford's Motion for Summary Judgment (v. the State) (MPR #37)
Bradford's Motion for Partial Summary Judgment (v. Town of Springfield) (MPR #38)
The State's Motion for Summary Judgment (MPR #39)
The Town of Springfield's Motion to Strike (MPR #44)
Bradford's Motion for Permission to File a Supplemental Brief (MPR# 46)


In this case, the State (Agency of Natural Resources) seeks the abatement and cleanup (including related damages and penalties) of hazardous waste discovered on a site in the Town of Springfield currently owned by Defendant Bradford Oil Company, Inc. Bradford, the sole defendant to the State's claim, filed third-party claims against 14 others for contribution or indemnity. Two contribution-defendants remain in the case: the Town of Springfield and the Springfield Regional Development Corporation. The principal dispute between Bradford and the State is over the proper interpretation of 10 V.S.A. § 6615, a purely legal matter. The dispute between Bradford and the Town is largely factual: whether the Town owns the fee to a portion of the site used for a town highway. The Springfield Regional Development Corporation is not the subject of any pending motions. A hearing was held on June 26, 2012.

The basic facts material to the summary judgment motions are not disputed. Most of the hazardous waste on the site (the pre-ownership or historical contamination) was deposited there during the site's days as a coal gasification plant, from about 1905 to 1951.[1] Coal gasification is a process of producing a combustible gas that was used in the area for heating and lighting. The site was owned and operated for coal gasification and other purposes by numerous entities during and since that time. In the 1960s, a relatively small portion of the site came (and remains) under the control of the Town of Springfield because it was needed to expand or straighten a pre-existing public highway. By the mid to late 1980s, the site was essentially abandoned. It remained so until 1996, when Mr. McGuinness purchased it from Synergy Gas Corp. as a potential location for the expansion of his business. After the purchase, Mr. McGuinness hired Bruno Associates to perform initial environmental testing. The testing revealed the existence of

---

[1] Bradford alleges that nearly all of the contamination on its property has been cleaned up at this point. It states that most of the remaining contamination is on the property of the Town and of the Springfield Regional Development Corporation. That factual matter is not before the court.

contamination. Bruno Associates recommended a Phase I Environmental Site Assessment. Rather than further study the site, Mr. McGuinness decided to sell it. In 1997, Bradford, with actual knowledge of Bruno Associates' findings, purchased the site. Prior to the sale, neither Mr. McGuinness nor his agents undertook any activities on the site that might have exacerbated then-existing historical contamination or introduced new contaminants. In short, Mr. McGuinness sold the site to Bradford in the same state in which he found it.[2]

Bradford began demolition and construction activities related to the eventual development of a gas station and convenience store on the site. Those activities may have exacerbated the then-existing contamination, some of which was transported offsite. Bradford currently owns the site. It or a lessee currently operates the gas station and convenience store.

By 1998, the Vermont Agency of Natural Resources (ANR) had ordered Bradford to clean up the solid waste and contaminated soil transported offsite and to begin assessing the contamination at the site. From 1998 to 2001, Bradford voluntarily performed the testing, monitoring, and/or cleanup activities requested of it by ANR. Though construction of the gas station revealed more concerns about the extent of contamination, in 2001, ANR evidently ceased communications with Bradford.[3] In 2004, however, ANR ordered Bradford to resume monitoring and testing activities. Bradford initially acceded to ANR's renewed requests, but then asserted that it would no longer take responsibility for any remediation or related activities on the site. Bradford's position was and remains that all of the contamination now on the site is of historical origin, preexisted its ownership of the site, and it should not be liable for the cleanup of contamination that it did not cause.

In the pending motions, Bradford argues that it does not have full liability to the State for the historical contamination and, as a factual matter, that it has fully remediated any releases that it actually caused. It argues that it has no liability under the proportional liability defense of 10 V.S.A. § 6615(c) and that any interpretation of § 6615(c) that results in its liability for historical contamination that it did not cause violates the Common Benefits Clause of the Vermont Constitution, ch. I, art. 7. Separately, it argues that it is not liable to the State under the third-party liability provision of § 6615(d)(1)(C). With regard to the Town of Springfield, Bradford argues that the Town is liable as a current owner for the portion of the gasification property that it currently owns.

The State argues that Bradford has joint and several liability for the historical contamination. The Town argues that it does not own any portion of the site.

*Overview of 10 V.S.A. § 6615*

The central liability provision of Vermont's Waste Management Act is 10 V.S.A. § 6615.

---

[2] Bradford acknowledged the lack of any basis for third party liability against the McGuinnesses at the hearing on the current motions; summary judgment was entered in their favor on the record.

[3] The long gap in communication between ANR and Bradford goes unexplained in the record but there is no indication it caused Bradford any prejudice.

Under § 6615(a), four classes of entities may be liable for abatement of a "release" and costs of investigation, removal, and remediation: (1) the owner or operator of the affected "facility" (the current owner or operator); (2) "any person who at the time of release . . . owned or operated any facility at which such hazardous materials were disposed of" (a former owner or operator); (3) anyone who owned and arranged for the disposal of hazardous waste at a facility owned or operated by another (an arranger); and (4) anyone who transported hazardous waste to a facility from which there was a release (a transporter). 10 V.S.A. § 6615(a)(1–4). No arrangers or transporters are involved in this case.

*Current* owners and operators and *former* owners and operators are different in kind under § 6615(a). Former owner liability is contingent on ownership "at the time of release." A "release" is "any intentional or unintentional action or omission resulting in the spilling, leaking, pumping, pouring, emitting, emptying, dumping, or disposing of hazardous materials into the surface or groundwaters, or onto the lands in the state." 10 V.S.A. § 6602(17). That is, "release" refers not to the fact of existing contamination but to the act that causes the contamination. *State v. Howe Cleaners, Inc.*, No. 27-1-04 Wncv, slip op. at 7 (Toor, J., Mar. 10, 2006), available at http://www.vermontjudiciary.org/20062010%20TCdecisioncvl/2006-3-15-2.pdf, 2006 WL 6047594 ("The release is, for example, the leaking; it is not the mere fact of existing contamination caused by the leak.").[4] Under § 6615(a)(2), a former owner thus is one who owned the site when the contamination was caused but who no longer owns it. *Howe Cleaners*, slip op. at 9. Current owners have liability under § 6615(a)(1) merely by virtue of their current ownership, regardless of their connection to the cause of contamination at the site—their liability is not contingent on whether they caused the contamination. A responsible person generally has strict joint and several liability to the State. 10 V.S.A. § 6615(c). One who owned the site in the past during a time at which contamination existed, but no release occurred, is not a responsible person under § 6615(a)(2).

Several complete statutory defenses to § 6615(a) liability exist. There is no liability for contamination caused by an act of god or war. 10 V.S.A. § 6615(d)(1)(A), (B). If the potentially responsible party can prove due care and that it took reasonable precautions, there is no liability for the "act or omission of a third party . . . other than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant" (the third party liability defense). *Id*. § 6615(d)(1)(C). Under certain circumstances, there will be no liability if the contamination was caused solely by the migration of contaminants from an offsite location. *Id*. § 6615(d)(2). A municipality may have a complete defense if it acquired contaminated property "through bankruptcy, tax delinquency, abandonment, or other similar circumstances." *Id*. § 6615(d)(3). A current owner or operator will have a complete defense to liability for historical contamination if it purchased the site having no knowledge of the contamination "after a diligent and appropriate investigation" (the diligent or innocent owner defense). *Id*. § 6615(e). In several situations, a secured lender may have a complete defense to liability. *Id*. § 6615(g).

A party with liability to the state nevertheless has two potential ways to minimize total

---

[4] None of the parties has disputed the interpretation of 10 V.S.A. § 6615(a)—so far as it goes—arrived at in *Howe Cleaners*. There is no binding precedent to the contrary. The court finds Judge Toor's interpretation of § 6615(a) in *Howe Cleaners* highly persuasive and adopts it for purposes of this case.

3

effective liability. A party who can prove responsibility for only a portion of the cleanup costs is liable to the state only for that portion, and is not subject to joint and several liability (the proportional liability defense). 10 V.S.A. § 6615(c). A responsible person also may implead (or otherwise sue) and seek contribution or indemnity from any other responsible person. *Id*. § 6615(i).

In this case, the State sued one defendant only, Bradford, the current owner of the site. The State seeks full liability against Bradford for the entire cost of investigation, monitoring, and the cleanup. Bradford, in turn, impleaded what appears to have been all other potentially responsible persons that it could identify, only two of whom remain in the case.

> *Bradford's Motion for Summary Judgment (v. the State)*
> *The State's Motion for Summary Judgment*
> *Bradford's Motion for Permission to File a Supplemental Brief*

With regard to its liability to the State, Bradford draws a bright-line distinction between the contamination that it caused (related to its own construction activities) and the contamination that it did not cause (the pre-ownership or historical contamination caused by others). Bradford concedes that it is directly responsible for releases that it caused on the site or by transporting contaminated soil offsite. Bradford alleges that the contamination it directly caused now is cleaned up and it should have no further liability in that regard. The State disputes whether Bradford's own releases are fully cleaned up. This is a factual dispute that the court cannot resolve on summary judgment.

Bradford disclaims all liability for historical contamination *as a matter of law*. The principal defense available to a current owner for pre-ownership contamination is the innocent owner defense, 10 V.S.A. § 6615(e). The current owner has total liability to the state under § 6615(a)(1), (c), but a complete defense if the owner purchased the property without knowledge of the contamination after reasonable due diligence, *id*. § 6615(e). Bradford concedes that it is not an innocent owner because it purchased the site with knowledge of the contamination. Instead, Bradford claims that the proportional liability defense of 10 V.S.A. § 6615(c) and the third-party liability defense of § 6615(d)(1)(C) are available to it and demonstrate that it has no liability to the State for pre-ownership contamination.

### *Proportional liability under 10 V.S.A. § 6615(c)*

Bradford argues that the plain language of § 6615(c) shows that the proportional liability defense is available to it, and that evidence of legislative history demonstrates that its interpretation is correct. Any interpretation to the contrary, argues Bradford, violates the Common Benefits Clause. The State argues that neither the plain language nor the legislative history shows that this defense applies to a current owner in the context of pre-ownership contamination and that such an interpretation does not violate the Common Benefits Clause.

Section 6615(c) explains that one who is a responsible party under § 6615(a) generally has strict liability for the entire contamination regardless of fault. However, § 6615(c) permits an otherwise strictly liable party to prove that it is liable only for a portion of the contamination

4

and to limit liability to the extent that portion can be proven. This is the "proportional liability" defense. Section 6615(c), in its entirety, reads as follows:

> In any suit to enforce claims of the state under this section, it is not necessary for the state to plead or prove negligence in any form or manner on the part of the person specified in subsection (a) of this section. The state need only plead and prove the fact of the release or threatened release and that the person in question was as specified in subsection (a), or that the release or threatened release occurred at or involved any real property, structure, equipment or conveyance under the control of that person. Any person who has released hazardous material as specified under subsection (a), or is in any way responsible for any hazardous materials which the agency has removed or is removing pursuant to subsection 1283(b) of this title shall be strictly liable, jointly and severally, without regard to fault, for all cleanup, removal and remedial costs. *Where hazardous materials released by one person are or may be mixed with those released by another, the strict liability established under this section shall be with respect to the cleanup, removal and remedial costs of all the materials involved; provided however, it shall be a defense to joint and several liability under this section if the responsible person establishes by a preponderance of the evidence that he or she is responsible for only a certain portion of the costs of the cleanup, removal and remedial action, considering such factors as the volume and toxicity of the material contributed by the person to the release, then that person's liability shall be limited to the amount so established.* Operators of municipal landfills or persons operating landfills on behalf of municipalities shall not be jointly and severally liable under this section to the extent that they are acting as landfill operator. Generators of household waste, as defined by rule of the secretary, shall not be liable under this section.

10 V.S.A. § 6615(c) (emphasis added).

Bradford claims that the proportional liability defense applies to it as a current operator of the site because it caused a release where contamination was present and it can prove the extent of its own release. Thus, Bradford argues, its current operator liability should be no more expansive than its own release(s). The court does not need to resolve whether this would be so were Bradford *merely* a current operator of the site and had the other contamination occurred *during* Bradford's ownership. The source of Bradford's liability for pre-ownership contamination is its status as a current owner.

The real question is whether a 10 V.S.A. § 6615(a)(1) current owner may minimize liability to the state *for pre-ownership contamination* by proving proportional liability under § 6615(c). The plain language of the proportional liability defense—both in isolation and when viewed within the greater context of the whole liability scheme of § 6615—strongly suggests not. The proportional liability defense addresses itself to situations in which a party is responsible for a release that is mixed with a release for which a different party is responsible. In that situation, the party responsible for one of the releases may escape liability for the rest of the contamination by proof of the limit of its portion of the contamination. A current owner's

liability, however, does not arise out of any particular release—it arises purely out of current ownership. Thus, in relation to the state, there is no proportionality of historical contamination for a current owner to prove. As the innocent owner provision explicitly says, a current owner whose purchase of the site was not innocent "shall be liable" for pre-ownership contamination. *Id*. § 6615(e). Bradford's interpretation of the proportional liability provision would completely insulate every new owner of a site from liability regardless of the innocence of the purchase, rendering § 6615(a)(1) and (e) complete nullities. It also would largely erase the distinction between a current owner and former owner and would make the contribution and indemnification provision largely unnecessary. The contribution provision is most important in a case like this, where the state sues a current owner only, leaving that current owner to litigate over contribution with all other potentially responsible persons. While some of the language of § 6615 may be "baffling" or uncomfortable for the "logician [and] grammarian," the court cannot ignore the language that is plainly stated. *State v. Howe Cleaners, Inc.*, No. 27-1-04 Wncv, slip op. at 8 (Toor, J., Mar. 10, 2006), available at http://www.vermontjudiciary.org/20062010%20TCdecisioncvl/2006-3-15-2.pdf, 2006 WL 6047594 (quoting *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 883 (9th Cir. 2001) and comparing the circular and obtuse language of § 6615 with that of CERCLA).

Bradford nevertheless argues that evidence of the legislative history related to the adoption of the proportional liability provision demonstrates that it is intended to apply to a current owner vis-à-vis historical contamination. The court has reviewed the record evidence of legislative history submitted by Bradford. The legislative history documents a policy concern among some legislators for what became known as the "one-barrel" fairness problem. The concern was that fairness counsels against assigning strict liability for 100 "barrels" of pollution caused by others to a party actually responsible for causing only one barrel and not the other 99. Bradford demonstrates that out of this concern, clearly voiced in legislative hearings, emerged the proportional defense language of § 6615(c). However, the legislative history only reveals examination of the policy interest and related defense in the context of draft statutory language *before* it included terms giving current owners liability which is *not* contingent on causation for any release. At the time of the one-barrel discussions, the draft language only assigned responsibility to various releasing persons. It was only in the final days of the enactment process that current owners were added as a unique class of fully responsible parties. The legislative history nowhere shows that the legislature had the same concerns about current owners as it did about releasing persons. Instead, the legislative history strongly implies that the defense was intended to improve fairness among parties whose liability arises out of responsibility for particular and demonstrably limited releases.

Current owners are different in kind from all other potentially responsible persons. Current owner liability springs not from the occurrence of any particular release, but merely from the fact of current ownership. Unlike all other potentially responsible persons, current owners had the ability to avoid liability altogether by choosing not to purchase the site or by purchasing innocently. If instead they purchased the problem voluntarily—which Bradford did—they are strictly liable to the state for the whole cleanup; with regard to others they have the opportunity to seek contribution or indemnity.[5] Releasing parties never got the same opportunity

---

[5] The court understands that the right to seek contribution is a vacuous remedy if third-parties with responsibility and resources to contribute cannot be identified, and that this may be a more significant problem in cases such as

6

to avoid liability altogether. Their liability arose out of their releases. To a new purchaser, the releases always happened in the past and liability always can be avoided completely. Applying joint and several strict liability to a releasing party—with no proportional liability defense permitted—would make a person responsible for one barrel of contamination at some point in the past, however distant, liable for all of the unforeseeable barrels of contamination caused by others in the future. The legislature chose to provide the one-barrel releasers with the opportunity for a defense, for which they bear the burden of proof, vis-à-vis other releasers. It chose a different level of responsibility for current owners. Consideration of the distinctions shows why, though the legislature had concerns about the one-barrel problem, the language of the statute represents sound policy. The one-barrel policy interest does not translate to current owners.

What little record evidence of legislative history addresses current owner liability does not advance Bradford's position. Commissioner Lash testified that current owner liability, coupled with the innocent owner defense, was necessary to prevent what he characterized as "fraudulent transfers." One witness's interpretation of proposed legislation is highly unlikely to be an authoritative source of legislative intent. Even if the comment were dispositive, however, the only evident way that current owner liability would thwart "fraudulent transfers" is by discouraging prospective buyers from becoming current owners of contaminated property, thus reducing the marketable value of the site and inducing the would-be transferor to clean up the contamination or prevent it from occurring in the first instance. This is consistent with *not* extending the proportional liability defense to current owners. No new purchaser of a site would be expected to have caused the contamination on the site. Under Bradford's interpretation, all new purchasers could acquire contaminated sites free of any liability for the contamination.

Bradford also cites to some testimony implying that ANR did not intend to assign liability to owners for historical contamination that they did not cause. However, the testimony is vague. If it supports an inference at all, it is that ANR did not intend to surprise current owners *at the time of adoption of § 6615* with strict joint and several liability for contamination that may have occurred generations earlier. Bradford is not in such a situation. Bradford purchased the site with knowledge of the contamination and statutory notice that doing so likely would render it liable to the State for pre-ownership contamination.

The proportional liability defense is not available to a current owner, such as Bradford, with regard to liability for pre-ownership contamination.

Nor does such an interpretation violate the Common Benefits Clause. The Vermont Clause, like the federal Equal Protection Clause, generally protects similarly situated citizens from unequal treatment by the state. See *Baker v. State*, 170 Vt. 194, 212–215 (describing the test under the Common Benefits Clause and distinguishing it from that under the Equal Protection Clause). The heart of a Common Benefits inquiry is to:

> ascertain whether the omission of a part of the community from the benefit,
> protection and security of the challenged law bears a reasonable and just relation

---

this that are based primarily on aged contamination. However, this is the liability scheme that the legislature enacted.

to the governmental purpose. Consistent with the core presumption of inclusion, factors to be considered in this determination may include: (1) the significance of the benefits and protections of the challenged law; (2) whether the omission of members of the community from the benefits and protections of the challenged law promotes the government's stated goals; and (3) whether the classification is significantly underinclusive or overinclusive.

*Badgley v. Walton*, 2010 VT 68, ¶ 21, 188 Vt. 367 (quoting *Baker*, 170 Vt. at 214). In relation to liability for historical contamination, a current owner is not similarly situated to historical owners. As described above, current owners such as Bradford are the only potentially responsible persons who have the ability to avoid liability altogether by not buying the contaminated property or by buying it innocently. Assigning strict joint and several liability, along with contribution and indemnity rights, to current owners whose purchase was not innocent serves the important state interest of encouraging polluters to clean up contamination on their own dime and improves the prospect that someone other than the state will be available to fund the cleanup. The inapplicability of the proportional liability defense in this context does not violate the Common Benefits Clause.

*Third party liability under 10 V.S.A. § 6615(d)(1)(C)*

Bradford claims that the third-party liability defense at 10 V.S.A. § 6615(d)(1)(C) applies to the State's claim against it. Section 6615(d)(1) provides:

(d)(1) There shall be no liability under this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of hazardous material and the damages resulting therefrom were caused solely by any of the following:
    (A) an act of God;
    (B) an act of war;
    (C) an act or omission of a third party other than an employee or agent of the defendant, or other than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant. If the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail, for purposes of this section, there shall be considered to be no contractual relationship at all. This subdivision (d)(1)(C) shall only serve as a defense if the defendant establishes by a preponderance of the evidence:
        (i) that the defendant exercised due care with respect to the hazardous material concerned, taking into consideration the characteristics of that hazardous material, in light of all relevant facts and circumstances; and
        (ii) that the defendant took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from those acts or omissions; or
    (D) any combination of the above.

10 V.S.A. § 6615(d)(1). Bradford essentially argues that the historical contamination in this case

was caused by a third party according to the terms of § 6615(d)(1)(C) and that Bradford exercised due care, *id*. § 6615(d)(1)(C)(i), once the contamination became known to it. Bradford argues that it was not required to take "precautions against foreseeable acts," *id*. § 6615(d)(1)(C)(ii), because "any combination of the above," *id*. § 6615(d)(1)(D), bases is adequate to avoid liability.

Bradford's interpretation conflicts with the plain language of § 6615(d)(1). Section 6615(d)(1) creates 3 defenses to liability that share one characteristic—they all describe situations in which a release was caused by some one or thing other than the owner or operator. There is no liability when the release was caused by (A) an act of God, (B) an act of war, (C) an act of a third party, or (D) some mixed cause including an act of God or war or a third party. This case does not involve any act of God or war. The third-party defense plainly contemplates that the owner or operator had the ability to exercise due care with regard to the hazardous materials *and* took reasonable precautions to avoid the release. A current owner could meet these qualifications with regard to a release that occurred during ownership. A current owner necessarily could not meet these qualifications with regard to pre-ownership contamination. Moreover, Bradford's interpretation would completely eviscerate the liability scheme for current owners with regard to historical contamination and the innocent owner defense. The third-party liability defense does not apply to a current owner with regard to pre-ownership contamination.

Bradford asserts that some federal interpretations of the analogous CERCLA defense, 42 U.S.C. § 9607(b)(3), persuasively demonstrate that Vermont's third-party defense should apply to it in the context of historical contamination.[6] The court is not persuaded. The federal defense has some similarity on the surface, but the structure of the statute is quite different on this issue. Particularly, CERCLA's innocent owner defense is not separately stated and so generally applicable to current owners as Vermont's is. Rather, it appears in the definition of "contractual relationship," 42 U.S.C. 9601(35)(A), a material term in the third-party defense provision. In various ways, some federal courts have been persuaded that the innocent owner provision does not, or may not, supersede or limit the third-party liability defense, which can apply to a current owner vis-à-vis historical contamination. But nothing in CERCLA clearly and generally states what the Vermont statute does: "Any person who is the owner or operator of a facility where a release or threatened release existed at the time that person became owner or operator *shall be liable* unless he or she can establish" the innocent owner defense. 10 V.S.A. § 6615(e). This distinction is dispositive; Bradford's interpretation of Vermont's third-party defense cannot be harmonized with § 6615(e). Federal interpretations of the CERCLA third-party defense are not helpful.

*Summary*

In short, Bradford has liability to the State for releases that it actually caused and for historical contamination predating its ownership. The innocent owner defense does not apply to Bradford because Bradford was aware of the contamination before it purchased the property. Therefore, Bradford "shall be liable." Neither the proportional liability provision of 10 V.S.A. § 6615(c) nor the third-party liability provision of § 6615(d)(1)(C) is available to a current owner

---

[6] Bradford raised this argument by way of a supplemental brief to which the State has objected. For efficiency purposes, the court grants the motion for permission to file the supplemental brief and addresses the issue now.

9

for historical contamination who is not an innocent owner under § 6615(e). This liability scheme does not violate the Common Benefits Clause. The State's motion for summary judgment is granted; Bradford's is denied.

*Bradford's Motion for Partial Summary Judgment (v. Town of Springfield)*
*The Town of Springfield's Motion to Strike*[7]

Bradford claims that the Town of Springfield, not it, is the current owner of a portion of the site and Bradford should have no liability for contamination on that portion. There is no dispute that the Town acquired a small portion of the site either in fee or as an easement to accommodate the expansion of Clinton Street in 1964. Bradford argues that its exhibits show that the Town acquired the property in fee.[8] The Town argues that it merely acquired an easement.

There is a common law presumption that the fee related to a town highway belongs to the abutting landowners and not the town. *Murray v. Webster*, 123 Vt. 194, 199 (1962). The presumption recognizes that "the administration of town affairs, particularly in regard to highways, are seldom conducted by officials skilled in the law" and ensures that title to the fee can be clearly determined regardless. *Id*. The initial question, then, is whether Bradford has come forward with any substantial evidence to pierce the presumption.

Bradford's evidence is equivocal or of marginal relevance at best. The maps and other evidence relating to the condemnation reflect no obvious intent to distinguish between ownership in fee or as an easement. Bradford focuses heavily on the language of the damage awards related to the condemnation proceeding. According to Bradford, the awards clearly indicate that the Town acquired its portion of the site in fee because each award refers to the "parcel" acquired. Bradford reasons that one who acquires a parcel typically is thought to have acquired the parcel in fee and then cites to the use of the term "parcel" in the damage awards to demonstrate the acquisition in fee. This argument is circular and relies on the false premise that the references to "parcels" in the damage awards necessarily equate to acquisitions in fee.

The selectboard's damage awards refer to a particular parcel and describe what appear to be the boundaries of the property condemned by the Town as well as the amount of the damage award. Bradford interprets the identification of each "parcel" as referring to what was

---

[7] The Town filed a motion to strike Bradford's allegation that the State agency of transportation handled the condemnation proceeding and/or its documentation in 1964. Because the issue does not affect the court's ruling on Bradford's motion, the motion to strike is denied as moot.

[8] Bradford also claims the right to a beneficial inference drawn pursuant to the spoliation doctrine with regard to a lost map. On this record, Bradford is entitled to no such inference. First, the record is unclear whether any such map actually was ever lost; the Town contends that the agency of transportation produced the map and Bradford possesses it. Second, Bradford makes no showing that the map might have distinguished between an acquisition in fee or as an easement. Third, Bradford does not attempt to show that the loss, if there was one at all, is the sort that entitles Bradford to an inference. To be entitled to a spoliation inference, Bradford must show (1) that the Town had an obligation to preserve the evidence at the time it was destroyed; (2) that the evidence was destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was relevant to, and would have supported, Bradford's claim. *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). Bradford has not attempted to support any of these criteria; it is not entitled to any inference on this record.

10

condemned. The Town interprets the identification of each "parcel" as what was damaged by the condemnation. This evidence is entirely equivocal and Bradford's interpretation entirely speculative. Bradford offers no evidence to explain why the Town would have wanted to acquire the expansion property in fee when the Town presumably owned the rest of Clinton Street only as an easement. Nor does any other evidence in the record point to fee ownership rather than easement ownership. This appears to be just the sort of situation in which the fundamental principle of *Murray v. Webster* controls: the common law presumes that the fee 'under' a town highway belongs to the abutting owners. Bradford's evidence does not overcome that presumption. Accordingly, the Town does not own the fee of the town highway portion of the site in this case.

## ORDER

For the foregoing reasons,

(1) Bradford's Motion for Summary Judgment (v. the State) (MPR #37) is *denied* and the State's Motion for Summary Judgment (MPR #39) is *granted* to the effect that:

(a) the proportional liability defense of 10 V.S.A. § 6615(c) cannot reduce Bradford's liability to the State for pre-ownership contamination;

(b) the court's interpretation of the liability scheme of 10 V.S.A. § 6615 does not violate the Common Benefits Clause; and

(c) the third-party liability defense of 10 V.S.A. § 6615(d)(1)(C) cannot reduce Bradford's liability to the State for pre-ownership contamination.

(d) The extent of Bradford's remaining liability for cleanup-related activities or damages and fines must be determined on the evidence.

(2) Bradford's Motion for Partial Summary Judgment (v. Town of Springfield) (MPR #38) is *denied* as to Bradford, but *granted* in the Town's favor: the Town's property was not acquired in fee.

(3) The Town of Springfield's Motion to Strike (MPR #44) is *denied* as moot.

(4) Bradford's Motion for Permission to File a Supplemental Brief (MPR# 46) is *granted*.

(5) A status conference will be scheduled for pretrial planning purposes.

Dated this ____ day of October 2012.

_____
Mary Miles Teachout, Superior Judge

11